UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARINDER KAUR GILL,<br>Plaintiff,<br>v.<br>AMN WORKFORCE SOLUTIONS, LLC,<br>Defendant. | No. 2:25-cv-03516-DAD-CSK<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION<br><br>(Doc. No. 17) |

This matter is before the court on defendant's motion to compel arbitration and to stay litigation. (Doc. No. 17.) On March 3, 2026, the pending motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 23.) For the reasons explained below, the court will deny defendant's motion.

**BACKGROUND**

On October 31, 2025, plaintiff Barinder Kaur Gill filed a wage-and-hour class action against her former employer defendant AMN Workforce Solutions, LLC in the San Joaquin County Superior Court. (Doc. No. 1-2 at 2.) On December 4, 2025, defendant removed the action to this federal court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, or, alternatively, pursuant to 28 U.S.C. §§ 1332(a)(1), 1441, and 1446. (Doc. No. 1 at 1–2.) In her complaint, plaintiff asserts claims on behalf of a putative class for: (1) Failure to Pay All Wages;

(2) Failure to Pay All Overtime Wages; (3) Failure to Pay All Overtime Wages at the Legal Overtime Pay Rate; (4) Failure to Pay All Wages Due to Illegal Rounding; (5) Failure to Provide All Meal Periods; (6) Failure to Authorize and Permit All Paid Rest Periods; (7) Failure to Fully Reimburse Work Expenses, (8) Derivative Failure to Timely Furnish Accurate Itemized Wage Statements, (9) Violations of California Labor Code §§ 201–202, and (10) Unfair Business Practices. (Doc. No. 1-2 at ¶¶ 33–152.)

On January 8, 2026, defendant filed the pending motion to compel arbitration, contending that plaintiff entered into a valid arbitration agreement and that her claims fall within the scope of that agreement. (Doc. No. 17 at 3–6.) Defendant claims that on July 22, 2024, plaintiff entered into a mutual arbitration agreement (the "Agreement") with defendant, which mandated arbitration of "all claims (common law or statutory)" and specified that "[c]overed claims include but are not limited to all claims arising out of, in connection with, or relating to Employee's employment with COMPANY . . . to the fullest extent allowable under applicable law." (Doc. No. 17-2 at 2–3.) In support of this contention, defendant attaches a declaration from Elisabeth Arredon, a credentialing analyst for defendant. (Doc. No. 17-1.) Arredon attests that in her capacity as a credentialing analyst, she is familiar with the software, applications, and onboarding process utilized by healthcare professionals seeking employment with defendant. (*Id.* at ¶ 5.) At the time of plaintiff's onboarding, defendant utilized software called E-Recruit to access, review, store, and maintain documents reviewed and signed by defendant's employees. (*Id.* at ¶¶ 6–7.) Arredon confirms that plaintiff was sent a link to the Agreement through E-Recruit on July 17, 2024 and electronically signed the Agreement on July 22, 2024. (*Id.* at ¶ 9.) Arredon further confirms that "only [plaintiff] could have accessed and electronically signed the Mutual Arbitration Agreement through E-Recruit because E-Recruit required [plaintiff] to log in using her unique email address and password" before she could access or sign the Agreement. (*Id.* at ¶ 10.) Defendant also attaches to the Arredon declaration the Agreement bearing plaintiff's electronic signature. (Doc. No. 17-2 at 3.)

On January 22, 2026, plaintiff filed her opposition to defendant's motion, arguing that defendant cannot show the Agreement was valid and that the Agreement is both procedurally and

substantively unconscionable. (Doc. No. 19 at 5–9, 11–15.) In support of her argument, plaintiff attaches her own declaration attesting that she does not recognize the Agreement, does not recall receiving or signing the Agreement, and that no defendant employee discussed or explained arbitration to her before or during her employment. (Doc. No. 19-1 at ¶¶ 5–6.) According to plaintiff, she would not have willingly signed the Agreement had she known what arbitration was. (*Id.* at ¶ 7.) Additionally, plaintiff attests that she was rushed to complete the onboarding tasks sent to her by defendant's employees and had no opportunity to ask questions. (*Id.* at ¶ 4.)

On February 2, 2026, defendant filed its reply. (Doc. No. 20.) On April 7 and June 24, 2026, defendant filed notices of supplemental authority in support of its motion. (Doc. Nos. 24–25.)

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. There is generally a "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 504 (2018). The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the [FAA] . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)). "When deciding a motion to compel arbitration, a district court must treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 922 (N.D. Cal. 2023) (internal quotation marks and citation omitted); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667,

670 (9th Cir. 2021) ("The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.") (internal quotation marks and citation omitted).

**ANALYSIS**

Defendant argues that plaintiff entered into a valid arbitration agreement and that her claims fall within the scope of that agreement. (Doc. No. 17 at 3–6.) Plaintiff contends that defendant cannot show the Agreement was valid and that the Agreement is both procedurally and substantively unconscionable. (Doc. No. 19 at 5–9, 11–15.)

**A. Agreement to Arbitrate**

Plaintiff argues that defendant cannot show that the Agreement bearing plaintiff's signature was valid because plaintiff does not recognize and denies signing it. (*Id.* at 11–15.) In response, defendant argues that plaintiff's declaration does not support her contention that she denies signing the Agreement. (Doc. No. 20 at 9.) Rather, plaintiff only attests that she *does not recall* receiving or signing the Agreement. (*Id.*) This, according to defendant, does not create a genuine dispute over the Agreement's formation. (*Id.* at 9–12.)

"In determining the validity of an agreement to arbitrate, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (citation omitted). "Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). The Agreement here states that it is governed by the FAA "or if for any reason the FFA does not apply, the arbitration law of the state in which Employee rendered services to COMPANY at the time the claim arises." (Doc. No. 17-2 at 2.) While the parties do not explicitly specify which state law applies, plaintiff alleges that her employment took place in California (Doc. No. 1-2 at ¶ 7) and the parties rely on California law to support their arguments (Doc. Nos. 17, 19–20). Therefore, the court will apply California law. *See Pinedo v. A Place for Mom*, No. 24-cv-03875-JCS, 2024 WL 4565090, at *7 (N.D. Cal. Oct. 24, 2024) (applying

California law where "both sides relied on California law to support their arguments related to unconscionability and at the motion hearing, they expressly stipulated that California law applies to the question of whether the delegation provision is unconscionable.").

As noted above, defendant bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (citing *Knutson*, 771 F.3d at 565). "When determining whether parties have agreed to submit to arbitration, courts apply state-law principles of contract formation and interpretation." *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) (citing *In re Holl*, 925 F.3d 1076, 1083 (9th Cir. 2019)). "Under California law, '[t]he party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature.'" *Jean-Baptiste v. Cal. Coast Credit Union*, No. 23-cv-00533-LL-VET, 2024 WL 460241, at *2 (S.D. Cal. Feb. 6, 2024) (quoting *Bannister v. Marinidence Opco, LLC*, 64 Cal. App. 5th 541, 543 (2021), *as modified* (May 21, 2021)). "If the movant bears its initial burden, the burden shifts to the party opposing arbitration to identify a factual dispute as to the agreement's existence—in this instance, by disputing the authenticity of their signatures." *Iyere v. Wise Auto Grp.*, 87 Cal. App. 5th 747, 755 (2023), *review denied* (Apr. 26, 2023). "To bear this burden, the arbitration opponent must offer admissible evidence creating a factual dispute as to the authenticity of their signatures." *Id.* Once "the validity of the signature is challenged, the [moving] party must 'establish by a preponderance of the evidence that the signature was authentic.'" *Jean-Baptiste*, 2024 WL 460241, at *2 (quoting *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016)); *see also Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844 (2014) (acknowledging that the "burden of authenticating an electronic signature is not great").

Here, defendant has met its initial burden to demonstrate the existence of an agreement to arbitrate by submitting the declaration of Elisabeth Arredon (Doc. No. 17-1) and attaching a copy of the Agreement reflecting plaintiff's electronic signature (Doc. No. 17-2). *See Jean-Baptiste*, 2024 WL 460241, at *2 (finding that the "[d]efendant met its initial burden to show that a valid arbitration agreement exists by proffering a Member Services Request [] form with Plaintiff's

apparent handwritten signature [] and a copy of Defendant's current Membership and Account Agreement [] form which includes an arbitration provision"); *Brooks v. Greystar Real Est. Partners, LLC*, No. 23-cv-01729-LL-VET, 2024 WL 3489205, at *4 (S.D. Cal. July 19, 2024) ("In this case, Defendants met their initial burden to show that a valid arbitration agreement exists by providing a copy of McGill's signed Lease with McGill's electronic signature."), *motion to certify appeal denied*, No. 23-cv-01729-LL-VET, 2025 WL 958598 (S.D. Cal. Mar. 31, 2025); *see also Cortez v. Cambridge Real Est. Servs., Inc.*, No. 22-cv-07332-HSG, 2023 WL 4534946, at *3 (N.D. Cal. June 16, 2023) ("The party moving to compel arbitration may meet its initial burden of proving that an agreement exists by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature.") (internal quotations and citation omitted). Therefore, the burden shifts here to plaintiff to offer evidence creating a factual dispute as to the Agreement's existence or the authenticity of her signature. *See Tercero v. Sacramento Logistics LLC*, No. 2:24-cv-00953-DC-JDP, 2025 WL 43125, at *3 (E.D. Cal. Jan. 7, 2025) (describing the burden-shifting framework).

As noted, contrary to her denial of signing the Agreement, the only evidence plaintiff submits to challenge the Agreement's existence is that she "do[es] not recognize the [A]greement and do[es] not recall receiving or signing the [] [A]greement." (Doc. Nos. 19 at 11–15; 19-1 at ¶ 5.) Accordingly, plaintiff has not carried her burden of challenging the authenticity of either her

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

electronic signature or the Agreement itself.[1] *Rios v. Cognizant Tech. Sols. U.S. Corp.*, No. 2:25-cv-00251-DAD-CKD, 2025 WL 1684178, at *3 (E.D. Cal. June 16, 2025) (finding plaintiff did not challenge the authenticity of her electronic signature or arbitration agreement where she did not submit evidence showing she never signed the agreement); *Duval v. Costco Wholesale Corp.*, No. 22-cv-02338-TSH, 2023 WL 3852694, at *3 (N.D. Cal. June 5, 2023) (finding no "sufficient dispute as to the authenticity of the signature" where the plaintiff "does not actually state that she never signed the Agreement"); *Warren v. Del Taco Rests., Inc.*, No. 18-cv-00082-JGB-SP, 2018 WL 6167937, at *4–5 (C.D. Cal. Apr. 23, 2018) (finding that the "[p]laintiff has not raised a genuine issue of material fact as to whether a valid arbitration agreement exists between the parties" where she "presents no evidence to dispute her ability to access the People Matter system or sign the on-boarding documents other than her general denial of doing so"); *Iyere*, 87 Cal. App. 5th at 756 (finding that the plaintiffs offered no admissible evidence creating a dispute as to the authenticity of their signatures where they simply declared that they did "not recall signing the agreement" and did not know how their signatures were placed on the documents); *Bracamontes v. United Rentals, Inc.*, No. 2:23-cv-02697-DAD-CSK, 2024 WL 1884052, at *4 (E.D. Cal. Apr. 30, 2024) (rejecting the "plaintiff's challenge to the validity of the Arbitration Agreement" where

/////

---

[1] All but one of the cases on which plaintiff relies in this regard are distinguishable because they involve instances where plaintiffs explicitly denied receiving or signing the arbitration agreement at issue. *See Bannister v. Marinidence Opco, LLC*, 64 Cal. App. 5th 541, 544 (2021) ("[Plaintiff] presented evidence that she never saw the agreement during the onboarding process and did not affix her electronic signature to it[.]"), *as modified* (May 21, 2021); *Trinity v. Life Ins. Co. of N. Am.*, 78 Cal. App. 5th 1111, 1117 (2022) ("In a declaration submitted with her opposition, [plaintiff] stated, 'I am certain that I never saw, reviewed, received, submitted, agreed, consented, or signed—electronically, manually or otherwise—[the arbitration agreements][.]'"); *Garcia v. Stoneledge Furniture LLC*, 102 Cal. App. 5th 41, 52 (2024) ("[Plaintiff] did state in her declaration that she 'did not electronically sign' the exhibit."). The remaining case upon which plaintiff relies is distinguishable because, unlike here, the defendant in that case offered no explanation as to how it inferred the plaintiff was the person who could have signed the arbitration agreement where the plaintiff averred he did not recall signing it. *Compare Ruiz*, 232 Cal. App. 4th at 843–44 *with* (Doc. No. 17-1 at ¶¶ 9–10 (confirming that plaintiff electronically signed the Agreement because "E-Recruit logs data from the prospective employee's execution of documents, including the date and time when [plaintiff] electronically signed the Mutual Arbitration Agreement" and "E-Recruit required [plaintiff] to log in using her unique email address and password before she was able to access, review, and sign" the Agreement).)

the "plaintiff claims to believe that her digital signature was forged" but "presents no evidence to support this claim").

Accordingly, the court rejects plaintiff's challenge to the validity of the Agreement. *Rios*, 2025 WL 1684178, at *3–4 (rejecting plaintiff's challenge to the validity of the arbitration agreement where the plaintiff argued that the copy of the agreement bearing her electronic signature submitted by the defendant was insufficient to show that she signed the agreement but submitted no evidence suggesting she did not sign the agreement); *Nanavati v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1076 (N.D. Cal. 2015) (concluding that the defendant's declaration, which established in detail the basis for concluding that the plaintiff electronically signed the agreement, easily satisfied the defendant's "low burden to authenticate [the p]laintiff's electronic signature and establish the existence of a valid arbitration agreement" where the plaintiff argued that the defendant had not met this burden but did not challenge the facts set forth in the defendant's declaration).

**B. Unconscionability**

"In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir. 2024) (internal quotation marks and citations omitted). Under the FAA, a court may declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and may invalidate an arbitration agreement by "generally applicable contract defenses, such as fraud, duress, or unconscionability," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

"Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir.

2013) (citation omitted) (cleaned up). Procedural unconscionability focuses "on 'oppression' or 'surprise' due to unequal bargaining power," while substantive unconscionability focuses on "'overly harsh' or 'one-sided' results." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted).

1. Procedural Unconscionability

Plaintiff argues that the Agreement is a contract of adhesion that was offered to her as a condition of her employment and as such is procedurally unconscionable. (Doc. No. 19 at 6.) In response, defendant contends that the Agreement "is at most minimally procedurally unconscionable" because arbitration agreements offered on a take-it-or-leave-it basis are not per se unconscionable. (Doc. No. 20 at 13.)

"The California Supreme Court has held that the 'term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Martinez v. Vision Precision Holdings, LLC*, No. 1:19-cv-01002-DAD-JLT, 2019 WL 7290492, at *4 (E.D. Cal. Dec. 30, 2019) (quoting *Armendariz*, 24 Cal. 4th at 113). "Arbitration contracts imposed as a condition of employment"—like the Agreement here—"are typically adhesive." *Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849, 862 (E.D. Cal. 2024) (internal quotation marks and citations omitted). Indeed, defendant does not appear to contest that the Agreement was offered here on a take-it-or-leave it basis. (*See* Doc. No. 20 at 13.) Therefore, "the adhesive nature of the [Agreement] is sufficient to establish some degree of procedural unconscionability." *Hicks*, 736 F. Supp. 3d at 863 (internal quotation marks and citations omitted). "However, 'the adhesive nature of [the] [Agreement], without more, would give rise to a low degree of procedural unconscionability at most[,]' so the Court 'turn[s] to the question whether there are other indications of oppression or surprise that would lead California courts to conclude that the degree of procedural unconscionability is high.'" *Id.* (quoting *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261–62 (9th Cir. 2017)).

/////

/////

Here, plaintiff does not argue that she experienced oppression or surprise[2]—she rests her argument on the fact that the Agreement was presented to her on a take-it-or-leave-it basis. (Doc. No. 19 at 6.) Accordingly, the court finds that the degree of procedural unconscionability is low, and the Agreement will be enforceable unless the degree of substantive unconscionability is high. *Hicks*, 736 F. Supp. 3d at 866 ("Plaintiff has not established any other element of oppression or surprise associated with the [arbitration] agreement[.] [T]herefore under California law, the degree of procedural unconscionability of [such] an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.") (alterations in original) (internal quotation marks and citations omitted); *Tercero*, 2025 WL 43125, at *7 (finding a "*de minimis* level of procedural unconscionability" where "[p]laintiff present[ed] no evidence of oppression or surprise, beyond the fact that the contract was given to her on a take-it-or-leave-it basis as part of her employment application"), *reconsideration denied*, No. 2:24-cv-00953-DC-JDP, 2025 WL 2811078 (E.D. Cal. Oct. 3, 2025); *Thomas-Cole*, 2026 WL 1113888, at *4 ("Therefore, lacking elements of surprise or oppression, the procedural unconscionability of the Agreement is modest because 'the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most.'"); *Shamblin v. Andy Frain Servs., Inc.*, No. 2:23-cv-00605-DJC-AC, 2024 WL 1199478, at *3 (E.D. Cal. Mar.

---

[2] While plaintiff does not argue oppression or surprise, she submits evidence that (1) "she was rushed" to complete onboarding documents, (2) no defendant employee explained arbitration to her, and (3) she was unfamiliar with arbitration until her attorneys discussed it with her. (Doc. No. 19-1 at ¶¶ 4, 6.) According to defendant's declaration, plaintiff had at least five days to review and sign the Agreement. (*See* Doc. No. 17-1 at ¶ 9 (attesting that plaintiff was sent a link to the Agreement on July 17, 2024 and signed the agreement on July 22, 2024).) Courts have found such evidence presented in support of a finding of oppression to be unavailing. *See, e.g.*, *Hicks*, 736 F. Supp. 3d at 863–84 (finding plaintiff "failed to establish that there was any additional oppression when formulating the arbitration agreement separate from the oppression inherent in an adhesive contract" where plaintiff argued he had at least 24 hours to review the paperwork and did not understand the arbitration agreement until he retained counsel); *Thomas-Cole v. United Healthcare Servs., Inc.*, No. 2:25-cv-03713-DJC-CSK, 2026 WL 1113888, at *3–4 (E.D. Cal. Apr. 24, 2026) (concluding that "there [were] no significant oppressive elements present in th[e] [arbitration] Agreement apart from the take-it-or-leave it adhesive nature" where the plaintiff had three days to consider the agreement's terms before signing, claimed that the defendant did not explain the agreement to her, and did not know what arbitration was until her attorney explained it to her).

20, 2024) ("[C]ourts have repeatedly recognized that an adhesive contract presents only a 'low' degree of procedural unconscionability absent additional allegations of surprise and duress or oppression, which are not present here.") (collecting cases).

2. Substantive Unconscionability

Relying exclusively on the California Court of Appeal's decision in *Cook v. University of Southern California*, 102 Cal. App. 5th 312 (2024), plaintiff argues that the Agreement has three substantively unconscionable provisions: (1) it applies to any and all claims outside of her employment; (2) it lacks mutuality as it seeks to unilaterally enforce the Agreement against specified non-signatories; and (3) it is indefinite in time. (Doc. No. 19 at 6–9.) Defendant responds by arguing that *Cook* is preempted by the FAA and plaintiff cannot challenge the Agreement's broader coverage because her complaint asserts only employment-related claims. (Doc. No. 20 at 13–19.)

Whether an arbitration agreement's terms are substantively unconscionable does not depend on the nature of the plaintiff's claims. *See Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 505 (2024) ("[A]n unconscionability assessment focuses on circumstances known at the time the agreement was made."); *see also, e.g.*, *Cook*, 102 Cal. App. 5th at 316, 321–22 (finding that an arbitration agreement provision requiring the plaintiff to arbitrate claims unrelated to her employment was substantively unconscionable even where the plaintiff's complaint alleged discrimination and harassment in the course of her employment); *Bahamonde v. Amazon.com Servs. LLC*, No. 25-cv-03499-JSC, 2025 WL 2021801, at *1, *8 (N.D. Cal. July 18, 2025) (same). Further, the defendant cannot, on a *post hoc* basis, alter the arbitration agreement's terms to skirt a finding of substantive unconscionability. *See Cook*, 102 Cal. App. 5th at 321–22 ("USC appears to concede the scope of the agreement—as written—is unconscionably broad and must be construed to mean other than what it plainly states to avoid unreasonable results. Courts have rejected similar arguments.") (citations omitted); *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 116–17 (2004) (finding an arbitration provision requiring the parties to split the arbitration costs and to post fees in advance was unconscionable even though the employer stated that it was willing to modify the agreement and bear the cost of arbitration). Even where the

terms cannot be enforced as written due to statutory protections, unconscionability is evaluated based on the text of the arbitration agreement, not its practical effect. *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1147 (2012) (rejecting the argument that a unilateral fee-shifting provision did not render an arbitration agreement substantively unconscionable because the provision violated the Labor Code and could not actually be enforced against the employee as written).

As an initial matter, defendant argues that the FAA preempts the unconscionability holding in *Cook* because that holding impermissibly discriminates against arbitration agreements and reflects judicial hostility toward arbitration. (*Id.* at 14–17.) Defendant has previously raised this same argument unsuccessfully in a similar case before the U.S. District Court for the Northern District of California. Def.'s Reply Supp. Mot. Compel Arbitration at 7–11, *Gardner v. AMN Healthcare Servs., Inc.*, No. 25-cv-06509-VC (N.D. Cal. Dec. 29, 2025), ECF No. 45. Like the district court in *Gardner*, this court is not persuaded by defendant's argument. *See Gardner v. AMN Healthcare Servs., Inc.*, No. 25-cv-06509-VC, 2025 WL 3751929, at *2 (N.D. Cal. Dec. 29, 2025). Accordingly, the Court turns to analyzing whether the Agreement terms that plaintiff identifies are, as plaintiff claims, substantively unconscionable under California law.

a. *The Agreement Applies to Any and All Claims Outside of Employment*

Plaintiff argues that the Agreement's term mandating arbitration of "all claims (common law or statutory) . . . includ[ing] but [] not limited to all claims arising out of, in connection with, or relating to Employee's employment with COMPANY[]" is substantively unconscionable. (Doc. Nos. 19 at 7; 17-2 at 2.) Defendant argues plaintiff cannot challenge the Agreement's broader coverage because she is asserting only employment-related claims. (Doc. No. 20 at 17–19.)

As noted above, plaintiff is not barred from challenging the broad scope of the Agreement, as defendant claims. *See Cook*, 102 Cal. App. 5th at 316, 321–22; *Bahamonde*, 2025 WL 2021801, at *1, *8; *Gardner*, 2025 WL 3751929, at *2 ("AMN argues that this case concerns only employment-related claims, so [plaintiff] is barred from raising an unconscionability challenge on overbreadth grounds because she has not actually been disadvantaged by the

overbreadth of her agreement. That is wrong as a matter of California law.") (internal citations omitted). The court is persuaded by plaintiff's argument and finds that the broad scope of the Agreement is substantively unconscionable. *Cook*, 102 Cal. App. 5th at 321–25 (finding that the broad scope of the arbitration agreement was substantively unconscionable where the "plain language of the agreement require[d] [the plaintiff] to arbitrate claims that [were] unrelated to her employment with [the defendant]"); *Bahamonde*, 2025 WL 2021801, at *8 (same); *Mendoza v. Movement Mortg., LLC*, No. 2:24-cv-03371-DAD-CSK, 2025 WL 2402420, at *5 (E.D. Cal. Aug. 19, 2025) (same).

b. *The Agreement Lacks Mutuality*

Plaintiff next argues that the Agreement requires her to arbitrate her claims against "an expansive list" of defendant's related entities and individuals with no reciprocal safeguard for herself.[3] (Doc. No. 19 at 8–9.) According to plaintiff, such broad protections for defendant are one-sided and substantively unconscionable under *Cook*. (*See id.*) Defendant's argument to the contrary is premised on the contention that *Cook*'s holding is preempted by the FAA. (*See* Doc. No. 20 at 15.)

The court finds that the Agreement's one-sided protection is substantively unconscionable. As the court in *Cook* explained, "[w]here the agreement requires arbitration of claims against certain classes of third parties, nonsignatories can make 'a prima facie showing sufficient to allow them to enforce the arbitration clause as third party beneficiaries' simply by showing they fall within one of the classes of beneficiaries identified by the contract." 102 Cal. App. 5th at 328 (citation omitted). "Conversely, for [the employee] to enforce the arbitration agreement against [the company's] agents or employees as third-party beneficiaries, [the employee] would have to show [that the nonsignatory] actually accepted a benefit under the agreement." *Id.* "While it is theoretically possible for [the employee] to make this showing, it is

[3] Specifically, the Agreement binds plaintiff to arbitration for all claims she might have against "COMPANY (or its past, present and future affiliates, parents, subsidiaries, related entities, partners, benefit plans, actual or alleged joint employers, fiduciaries, owners, partners, shareholders or affiliates of any of the above, and all successors or assigns of any of them)[.]" (Doc. No. 17-2 at 2.)

unlikely." *Id.* "The plain language of the arbitration agreement thus provides a significant benefit to [the company's] related entities without any reciprocal benefit to [the employee]." *Id.* With "no justification for this one-sided treatment," the arbitration agreement is "substantively unconscionable for lack of mutuality in the claims that are subject to arbitration." *Id.*; *see also Bahamonde*, 2025 WL 2021801, at *8 (finding that the arbitration agreement was substantively unconscionable where the agreement defined covered parties to include broad swaths of third-party beneficiaries and arbitrable claims were "not limited to Plaintiff's employment").

c. *The Agreement Is Indefinite in Time*

Plaintiff next argues that the Agreement is substantively unconscionable because it is indefinite in time. (Doc. No. 19 at 9.) In this regard, the Agreement states that it "survives after the employment relationship terminates and can only be revoked or modified in writing signed by both Parties." (Doc. No. 17-2 at 3.) Again, defendant's argument to the contrary is premised on the contention that *Cook*'s holding is preempted by the FAA. (*See* Doc. No. 20 at 15–17.)

The Agreement's language is essentially identical to the language in the arbitration agreement at issue in *Cook*. *See* 102 Cal. App. 5th at 326 ("The arbitration agreement specifically provides that it will survive unless and until [plaintiff] and [defendant]'s president specifically terminate the agreement in a writing, signed by both parties, which expressly mentions the arbitration agreement."). Accordingly, the court finds that in designating that the Agreement will be effective for an indefinite duration, the terms of the Agreement are substantively unconscionable. *Id.* at 325–26 (finding that "the trial court did not err in holding that the duration of the arbitration agreement was substantively unconscionable"); *Bahamonde*, 2025 WL 2021801, at *8 (finding that the arbitration agreement applied "indefinitely" such that it was "overbroad in duration" where the agreement expressly provided that it "shall survive the termination of Employee's employment"); *Sandler v. Modernizing Med., Inc.*, No. 24-cv-00812-AJB-BJC, 2024 WL 4469217, at *8 (S.D. Cal. Oct. 9, 2024) (finding that the arbitration agreement was "one of indefinite duration, and thus substantively unconscionable" where the agreement limited modification or waiver of any rights under the agreement to "a writing signed by the President or CEO of Company and [the employee]" and stated that "the rights and

obligations of the parties to this Agreement will survive termination of [their] employment with the Company").

In conclusion, the Agreement is minimally procedurally unconscionable and, in at least three respects, substantively unconscionable. Accordingly, the court will turn to address whether the unconscionable terms may be severed so as to allow enforcement of the remaining terms of the Agreement. *See Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 431 (N.D. Cal. 2018) ("Even if substantively unconscionable terms are found in an agreement, they do not automatically render the entire agreement unenforceable. A court has discretion to either sever an unconscionable provision from an agreement or refuse to enforce the agreement in its entirety.") (internal citations omitted).

3. Severability

The California Court of Appeal in *Cook* has already examined the severability of substantively unconscionable terms nearly identical to the ones at issue here, as discussed above. That court reasoned as follows.

> "An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with additional terms. [Citation.]" (*Penilla v. Westmont Corp.* (2016) 3 Cal. App. 5th 205, 223, 207 Cal. Rptr. 3d 473.) Severance may be properly denied when the agreement contains more than one unconscionable provision, and " 'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.]" (*Baxter v. Genworth North America Corp.* (2017) 16 Cal. App. 5th 713, 738, 224 Cal. Rptr. 3d 556.) "We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion." (*Lange v. Monster Energy Co.* (2020) 46 Cal. App. 5th 436, 453, 260 Cal. Rptr. 3d 35, citing *Armendariz*, *supra*, 24 Cal.4th at p. 124, 99 Cal. Rptr. 2d 745, 6 P.3d 669.) " 'A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused.' " (*Workman v. Colichman* (2019) 33 Cal. App. 5th 1039, 1056, 245 Cal. Rptr. 3d 636.)
>
> As discussed above, three aspects of the agreement are unconscionable. USC argues the trial court abused its discretion in refusing to sever the unconscionable provisions and enforce the remainder of the arbitration agreement. It contends the trial court abused its discretion in finding the number of unconscionable terms to be dispositive on the issue of severance. It argues the trial court erred in not considering whether the central purpose of the agreement

> could be preserved through severance. We find these arguments unpersuasive.
>
> As an initial matter, we disagree with USC's characterization of the agreement's purpose. It claims "the central purpose of the Arbitration Agreement is to have nearly all employment related disputes resolved through arbitration." This characterization is expressly belied by the plain language of the agreement itself. The agreement's purpose is not directed only at disputes related to Cook's employment but instead requires Cook to arbitrate claims that do not relate to her employment or her employer.
>
> We also disagree with USC's characterization of the trial court's ruling. The court did not simply end its severability analysis at finding there were multiple unconscionable provisions in the agreement. Rather, the court expressly considered the central purpose of the agreement in determining it was permeated with unconscionability, stating "as it stands, the arbitration agreement is tainted with unconscionability because its central purpose appears to be the ability for the parties to arbitrate all possible disputes between each other, for an indefinite period of time, with USC able to move for arbitration of claims against it and its related entities, but Plaintiff only able to move for arbitration of claims by USC against her." There is no question that the trial court explicitly considered the central purpose of the agreement in ruling on severability.
>
> The trial court also determined that curing the unconscionable provisions would require substantive rewriting of the arbitration agreement to contradict its plain language, and that severance would provide a windfall to USC. We find the trial court could have reasonably concluded that "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz*, *supra*, 24 Cal.4th 83 at p. 124, 99 Cal. Rptr. 2d 745, 6 P.3d 669.) The trial court's finding that unconscionability permeated the arbitration agreement as a whole, and its refusal to sever the unconscionable provisions, was a reasonable exercise of its discretion. The trial court was not required to sever the offending provisions and enforce the remainder of the arbitration agreement.

*Cook*, 102 Cal. App. 5th at 328–30.

The court is persuaded by the analysis of the state appellate court in *Cook* and finds that the unconscionable provisions of the Agreement before it are not severable. The Agreement is therefore unenforceable. *Storms v. Paychex, Inc.*, No. 2:21-cv-01534-JAK-SSC, 2022 WL 2160414, at *19 (C.D. Cal. Jan. 14, 2022) ("[T]he Arbitration Agreement is procedurally and substantively unconscionable, and its inappropriate terms are not severable. Therefore, the

/////

Arbitration Agreement is unenforceable as to Plaintiff's claims."); *Mendoza*, 2025 WL 2402420, at *7 (same).[4]

**CONCLUSION**

For the reasons explained above:

1. Defendant's motion to compel arbitration and to stay this litigation (Doc. No. 17) is DENIED; and

2. The court hereby RESETS the Initial Scheduling Conference in this matter for November 9, 2026 before District Judge Dale A. Drozd by Zoom.

IT IS SO ORDERED.

Dated: **September 30, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

[4] In conjunction with its motion to compel arbitration, defendant moves for a stay of the litigation pending arbitration. (Doc. No. 17.) Because the court holds that the Agreement is unenforceable, it denies defendant's motion for a stay as moot. *See Rios*, 2025 WL 1684178, at *4 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.") (internal quotation marks and citations omitted).